731 So.2d 375 (1999)
STATE of Louisiana
v.
Elaine MENESES.
No. 98 KA 0699.
Court of Appeal of Louisiana, First Circuit.
February 23, 1999.
Zata W. Ard, Assistant District Attorney, Amite, LA, for appelleeState of Louisiana.
*376 A. Wayne Stewart, Albany, LA, for defendant-appellant Elaine Meneses.
BEFORE: FITZSIMMONS, GUIDRY and PETTIGREW, J.J.
FITZSIMMONS, J.
Defendant, Elaine Meneses, was charged by bill of information with aggravated battery, a violation of La.R.S. 14:34. She pled not guilty. Defendant waived her right to a trial by jury. After the bench trial, the judge found defendant guilty as charged and ordered a pre-sentence investigation report. Thereafter, the trial judge sentenced defendant to the maximum sentence of ten years at hard labor. Defendant filed a motion to reconsider sentence, which was granted by the lower court. Finding that the defendant had no prior criminal record and that its original sentence was excessive, the court resentenced defendant to three years at hard labor.[1] Defendant appealed, urging as her sole argument that there was insufficient evidence to support the guilty verdict.

FACTS
At approximately 10:36 p.m. on February 21, 1997, Tangipahoa Parish Sheriff's Deputy Morris Evan was dispatched to a local bar regarding a stabbing. When Deputy Evans arrived, he saw a woman lying on the floor of the bar; she was bleeding from a stab wound in her left side.
The deputy spoke with witnesses who informed him that there was an altercation between the victim and a couple. When the couple tried to leave the parking lot in their truck, the other bar patrons beat on the vehicle and caused damage to it before the couple fled. The deputies spoke with Donna Hayes[2] and Brady Matthews, who saw the fight. However, both stated that they did not see the actual stabbing or any weapon used during the fight. Mr. Matthews told the investigating officer that, upon pulling the victim away from the accused when they were fighting, he noticed that the victim was bleeding.
A short time later, the sheriff's office received a call regarding criminal damage to a vehicle. Upon their arrival to investigate that report, the deputies discovered that the vehicle was the one that had fled the bar parking lot. The deputies arrested defendant for the stabbing of the victim.
At the trial, the victim, Sherry Stanga, testified that she was at Wanda's Bar when she went outside to look for her nephew, Brady Matthews. Mr. Matthews told her that a man had beaten him earlier. The victim then heard a woman say "somebody tonight is gonna get hurt bad." When the victim answered "that's a shame for people to act like that," she was attacked by defendant. Ms. Stanga testified that she had never seen the defendant before that evening. The victim was not sure if the weapon used to stab her was an ice pick or scissors, but she positively identified defendant in court as her assailant. Although she admitted to having three or four beers that night, the victim was able to see that the weapon had a dark brown handle. She also testified that the police report erroneously listed her last name as "Ahedert."
Defendant's husband, Walter Meneses, testified on her behalf. Mr. Meneses stated that he and his wife were in the bar's parking lot when a fight started. He told his wife to leave and call the police. However, *377 some women prevented his wife from leaving for help. The couple was able to get inside their truck; whereupon, the crowd of people began beating on the truck, causing extensive damage. Mr. Meneses also stated that when the police came to investigate their report of damage to their vehicle, his wife was arrested. He denied his wife was involved in the fight and denied seeing his wife hit or stab anyone.
Defendant testified that she was talking to her husband when a man apparently overheard the conversation and swung at her. Defendant's husband jumped up and caught the man's fist. Then, some of the patrons in the bar came outside, and they jumped on her husband. A woman purportedly hit the defendant four times in the face. Defendant denied hitting or stabbing anyone, and she denied using any weapon. She further stated that she had no recollection of the victim or of the victim's appearance.
On rebuttal, the victim stated she had no doubt about her identification of defendant as the woman who attacked her.
In her two assignments of error, defendant contends that the state failed to prove a battery upon the victim listed in the bill of information, Sherry Ahedert. Specifically, she argues that the evidence, including the testimony of the victim, did not establish that the victim was Sherry Ahedert, as indicated in the bill of information.
Herein, at the conclusion of the state's case in chief, defense counsel made a motion for "directed verdict."[3] He argued that there was no proof of the allegations of a battery being committed on the person named "Sherry Ahedert." Noting that the evidence indicated that the police made a mistake in their report and that "apparently... Miss Stanga is also known as Miss Ahedert[,]" the trial judge denied the motion.
Louisiana Code of Criminal Procedure article 473 provides as follows:
When the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible. In stating any name of a victim it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.
Defendant cites State v. Reynolds, 209 La. 455, 24 So.2d 818, 819 (1945), in which the Louisiana Supreme Court reversed a conviction for aggravated battery where the information was fatally defective in that it failed to name the person upon whom the battery was committed.
Article 1, section 10 of the Louisiana Constitution provides that "the accused shall be informed of the nature and cause of the accusation against him." In 1974, the Louisiana Supreme Court in State v. James, 305 So.2d 514 (La.1974) overruled its prior decisions, which had annulled convictions on appeal when the identity of the victim was not properly identified, irrespective of the absence of surprise or prejudice. It was observed by the James court that the staunch requirement of specific notice of the accurate identity of the alleged victim emanated from the fact that, historically, the defendant had no real procedural means, other than through the indictment, to learn the particulars of an alleged offense prior to the trial. After the implementation of modern day pretrial devices, the strict construction of this article was no longer functionally based.
*378 Where an accused has been fairly informed of the charge and has not been prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction, where no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of the pleadings and the evidence in the instant prosecution. State v. James, 305 So.2d at 516-517; State v. Folse, 623 So.2d 59, 64-65 (La.App. 1st Cir.1993).
In State v. Folse, 623 So.2d at 64-65, the armed robbery charge identified the victim as a company; however, the crime of armed robbery inherently requires that the victim be an individual. At the trial court level, defense counsel never asserted that the omissions in the bill, concerning the names of the victims, prejudiced Folse by surprise, lack of notice, or not being fairly informed of the charges. Rather the evidence introduced at trial clearly revealed that Folse was fully aware of the allegations forming the basis of both offenses and the names of each of the victims.
The defendant in the instant trial testified that, not only did she have no recollection of the victim, but she was unaware of the identity or the appearance of the victim until the time of the trial when her attorney pointed the victim out to her. She further stated that she did not recognize the victim at the trial, even after her attorney had identified her. Thus, the facts surrounding the improper identification of the victim are distinguishable in the case before us.
While it is clear from the testimony of the defendant that she was aware of the nature of the allegations and the time and place that the dispute was to have occurred, she did not know the correct surname of the alleged victim. Moreover, the defendant testified that she could not identify the victim in the courtroom at the time of the trial. During the trial, the victim was called to the stand as Sherry Ahedert. It was only in the beginning of her testimony that the victim stated her correct name and testified that the police report contained an erroneous surname. The trial judge's conclusion that "apparently ... Miss Stanga is also known as Miss Ahedart" was an assumption, unsubstantiated by the evidence. Finally, and importantly, counsel for defendant did formally object to the technical insufficiency of the indictment during the trial proceedings prior to the verdict. Compare State v. Folse, 623 So.2d at 64-65.
The trial court erred in summarily denying the defendant's motion when faced with defense counsel's assertion of a defective indictment, without the presentation of evidence to ascertain that Miss Stanga was, indeed, also known as Miss Ahedart. See Burks v. United States, 437 U.S. 1, 12-13, 98 S.Ct. 2141, 2148-2149, 57 L.Ed.2d 1 (1978) (discussing United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300); see also, Bryan v. United States, 338 U.S. 552, 559-560, 70 S.Ct. 317, 321, 94 L.Ed. 335 (1950). The confusion produced by the defective indictment in the instant case cannot go uncorrected. It rises to the level of a violation of Article 1, Section 10 of the Louisiana Constitution of 1974. Defendant established that she was actually prejudiced by the failure of the bill of information to state the victim's correct surname; this error constitutes reversible error. Accordingly, the conviction is reversed, and the sentence is vacated. The matter is remanded to the district court for a new trial in conformity with the proper notice mandates enunciated in La. Const. art. 1, sec. 10.
CONVICTION REVERSED; SENTENCE VACATED; CASE REMANDED.
NOTES
[1] Insofar as the second sentence is concerned, we note the court did not vacate the original sentence before sentencing defendant on the second occasion. Although it is apparent from the court's actions that it intended to vacate the original sentence, out of an abundance of caution we vacate the first sentence. See State v. Thomas, 95-2348, pp. 6-7 (La. App. 1st Cir.12/20/96); 686 So.2d 145, 149, writ denied, 97-0192 (La.3/14/97), 690 So.2d 36.
[2] Donna Hayes' name was spelled "Heys" on the arrest report.
[3] La.Code of Criminal Procedure article 778 provides that a motion for acquittal may be made at the conclusion of the state's case.